Chief Justice Simpson
delivered the opinion of the Court.
In 1833 John Renfroe died intestate, leaving an only child, named William, who was an infant, and who subsequently died unmarried and without issue, before he attained the age of twenty-one.
John Renfroe, the father, at the time of his death was the equitable owner of a tract of land containing about one hundred and ten acres, the legal title to which was in the heirs of James Haggin, deceased. This tract of land, upon the death of the father, de *403 scended to his son William, who, at the time of his death, during his infancy, had a mother, but neither brothers nor sisters, living, never having had either brother or sister. His paternal grandfather, as well as his father’s brothers and sisters, were also alive. His mother, with whom he resided, continued in the possession of the tract of land during his life. After his death, she still continued in the possession of it for some years, and having obtained from the paternal grandfather of her deceased son a conveyance of all his right and title to it, she subsequently, in conjunction with her husband John Land, with whom she had intermarried after the death of her first husband, sold and conveyed it to Franklin Taylor, and gave him the possession of it.
The question fot decision, & statute on which, it depends.
This suit in chancery was instituted in 1850 by the brothers and sisters of John Renfroe, the father, asserting a right to said land, as the heirs at law of the infant William Renfroe, and praying a decree against Haggin’s heirs, whom they made defendants for a title, and against the widow and her vendee, Taylor, for the rents and profits and a surrender of the possession of the land.
The right of the complainants to the infant’s real estate depends upon the construction of the 5th section of the act of 1794, to reduce into one the several acts directing the course of descents. — (1 Statute Law, 563.) In that statute it is enacted that “where an infant shall die without issue, having title to any real estate of inheritance, derived by purchase or descent from the father, the mother of such infant shall not succeed to, nor enjoy the same, nor any part thereof, if there be living any brother or sister of such infant, or any brother or sister of the father, or any lineal descendant of either of them, saving, however, to such mother any right of dower which she may have in the said real estate of inheritance.”
In opposition to the complainant’s right, it is contended that the whole effect of the 5th section, is upon the contingencies mentioned, to exclude the mother, a» *404 heir, and the estate is left to descend according to the rules of inheritance prescribed by the statute, as it would do if no mother was living. The argument is, that this section does not declare who is to inherit the estate, hut only excludes the mother, and as it fails to designate the persons to whom the inheritance is to be transmitted, this must ho ascertained by reference to the other sections of the statute. And as the mother is expressly excluded, the estate must descend as if there was no mother nor brother nor sister, nor their descendants, and under the 7th section be divided into two moieties, one of which will go to the paternal, and the other to the maternal kindred, and that, as in this case there was a paternal grandfather living, the uncles and aunts on the father’s side were not entitled to any part of the inheritance.
Though Iheñlh section of the act or 1796 vl. Stat. 563.) hoes not expressly declare that the persons therein named, upon the exclusion of the mother, shall in hem an infant’s real estate, vet it is necessarily implied that, (.lie brothers and sisters, and others named, shall in herit on the ex-elusion of (he mother.
The 5th section of the statute does not expressly declare that the persons therein named, upon the exclu-clusion of the mother, shall themselves succeed to the inheritance, but such seems to be the necessary and inevitable implication arising out of its provisions. By the rule of inheritance adopted by the Virginia statute of 1785, and which, with the exception introduced by the 5th and 6th sections, is the rule which regulates the transmission of real estates of inheritance under our statute of 1796, the mother would inherit the estate in contest. But this section excludes the mother, upon the ground that the son derived the estate from the father. Following out the principle upon which the exclusion of the mother is founded, the estate, in the event that there are no brothers nor sisters of the infant, nor their descendants, should be transmitted to the kindred on the side of the father. The brothers and sisters of the father are therefore mentioned as the persons who are to exclude the mother, and must necessarily be regarded as being substituted in her place, and entitled to the estate, which would have passed to her, had she not been excluded. The interpretation of this section, by which the mother is excluded, and the gen *405 eral rule of descents established by the statute is an- , ....... , . . r i plied in giving direction to the transmission ot the infant’s estate, would defeat the operation of the principle upon which the exclusion of the mother evidently rests. One moiety of the estate would pass to the maternal kindred, although the mother herself cannot inherit it, and she would, although living, be superseded, that a moiety of the estate might be transmitted to kindred on the same side, that were more remote. Such a result was not contemplated by the Legislature, and would be entirely inconsistent with the object and design intended to be accomplished by the exclusion of the mother. As the estate was derived from the father, the design was, if the infant died without issue, leaving no brother or sister, or lineal descendant of either, to confine the succession to the kindred on the part of the father, if any of his brothers or sisters, or any lineal descendant of either of them, should be living. This object is attained by the construction which regards the. 5th section as virtually, and by necessary implication, designating the persons named as being entitled to the succession; and this construction is fortified by the consideration that no other part of the statute points out the direction which is to be given to the estate, during the lifetime of the mother, for it is only where there is no mother living that it directs the estate to bo divided into two moieties, one to go to the paternal and the other to the maternal kindred. If none of the persons described in the 5th section are alive, and capable to take the inheritance upon the death of the infant, the mother is not excluded, and under the operation of rules of descent established by the statute, would inherit the estate. The 7th section, therefore, which divides the estate into two moieties, and directs its disposition, can have no effect or operation during the lifetime of the mother, and consequently the present case is not provided for by the statute, unless the 5th section itself is construed as directing the course of the descent of the inheritance, and as transmitting it to the *406 brothers and sisters of the father; andv such is the construction that we give to it.
The mother is entitled to dower in the real estate of infants, descended from the father; nor is she barred by having purchased from the grandfather of the infant, upon the death of the latter, supposing him to be ihe heir at law. Neither a widow or her tenant is bound for rents for the occupancy of the mansion, and. until dower be assigned.
*406 A similar construction was given by the Supreme Court of the State of Virginia, to their statutes regulating descents, in the case of Templeman vs Steptoe, (1 Munford, 339,) in which the same question was presented and. considered, having arisen upon the statute of 1785 as amended by the statute of 1790, from which latter statute the 5th section of the statute of 1796 seems to have been transcribed.
The same construction was given to the statute by this Court in the case of Scroggin vs Allin, &c., (2 J. J. Marshall, 466.) But as the decision of that case turned upon the question of the chancellor’s jurisdiction, and was not made to depend upon the construction of the statute, it was not regarded, in the argument of this case, as having authoi'itatively settled the question.
But in the case of Gill’s heirs vs Logan’s heirs, (11 B. Monroe, 234,) a similar construction was given to the 6th section of the statute, in reference to the real estate of an infant, derived by descent from the mother, in which case it was decided, that upon the death of the infant, it passed by descent from him to the brothers and sisters of his mother, and his relations upon his father’s side were not entitled to any part of it. No argument, it is true, was used in that case, to prove the correctness of the construction given to the statute, but its construction was determined as if its meaning had been so obvious as not to require discussion, and we still think that the construction is proper, and that it is the only one of which the statute is reasonably susceptible.
The mother’s right of dower in the infant’s estate of inheritance, derived from the father, is expressly saved by the statute. The complainants, however, contend, that by purchasing and obtaining a conveyance to the land from the paternal grandfather, and then claiming and holding it as her own, she assumed an attitude hostile to the heirs at law, and has pnHuded herself from *407 asserting a claim to dower in the land. To sustain this position, a reference is made to the principle of law by which, when the w'idow consents to an act inconsistent with her right to actual endownent, she is bound by her consent, and barred of her legal title. By attending to the doctrine upon this subject, however, it will be perceived that it applies to cases where the widow agrees to accept an interest in the dowable estate, which is inconsistent with her title to dower in that estate, as where she accepts from the heir a lease for life for the whole of her husband’s freehold estate; since, in such a case, she cannot claim dower out of the estate, without partially defeating the lease, she will be barred of her dower. But here the widow took no right or interest in the estate by the conveyance from the paternal grandfather, and therefore done no act inconsistent with her right to dower. She supposed that she had obtained the title from the person who was heir at law, and had she done so, her right to dower would have merged in the fee simple title. But her mistake cannot deprive her of her legal right to dower, inasmuch as that right is the only one with which she has been invested. And as her husband resided upon the land at the time of his death, and she had a right to remain in the mansion house, and retain possession of the plantation thereto belonging, rent free, until dower was assigned her. we are of opinion that she is not only entitled to dower, but that she has a right to retain the premises until her dower was assigned her; and as the complainants, who are the heirs at law, have never had her dower assigned, nor offered to do it; that neither her nor her vendee is liable for any rents.
The complainants had a right to a decree against Iiaggin’s heirs for the title. The bond executed by Haggin states that the purchaser had execnted his notes for the purchase money. As the notes are not produced, and more than twenty years have elapsed since the sale was made by Haggin we regard the evidence in the cause, taken in connection with these cir *408 cumstances, as sufficient to prove the payment of the purchase money.
Turner for plaintiffs; Breck and Monroe for defendants.
The Circuit Court having dismissed the complainants’ bill, the decree is erroneous.
Wherefore, the decree is reversed, and cause remanded for further proceedings consistent with this opinion.